FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.
04 JUL 22 PM 2:19

SIGN_____
by DEPUTY CLERK

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID MATHIS | CIVIL ACTION |
| VERSUS | |
| BURL CAIN, WARDEN, ET AL. | NO. 00-0940-C-M3 |

CONSOLIDATED WITH

| | |
|---|---|
| JEFFERY C. CLARK, ET AL. | CIVIL ACTION |
| VERSUS | |
| THE STATE OF LOUISIANA, ET AL. | NO. 00-0956-C-M3 |

CONSOLIDATED WITH

| | |
|---|---|
| NORMAN BROWN, ET AL. | CIVIL ACTION |
| VERSUS | |
| SECRETARY RICHARD STALDER, ET AL. | NO. 00-0957-C-M3 |

CONSOLIDATED WITH

| | |
|---|---|
| DONALD WILLIAMSON | CIVIL ACTION |
| VERSUS | |
| SECRETARY RICHARD STALDER, ET AL. | NO. 00-0959-C-M3 |

CONSOLIDATED WITH

| | |
|---|---|
| DAVID BROWN | CIVIL ACTION |
| VERSUS | |
| RICHARD STALDER, ET AL. | NO. 01-0006-C-M3 |

Date Docketed: JUL 22 2004
Notices Mailed To: DLD, JSL, Prose, Edge, Cobb, Mathis, Davis, Hymel, Clark, Brown, Carley.
INITIALS: SH  DOCKET# 163

Case 3:00-cv-00940-RET-RLB   Document 163   07/22/04   Page 1 of 10

CONSOLIDATED WITH

ROBERT G. CARLEY                                        CIVIL ACTION

VERSUS

RICHARD STALDER, ET AL.                                 NO. 01-0007-C-M3

CONSOLIDATED WITH

BARRY S. EDGE                                           CIVIL ACTION

VERSUS

RICHARD STALDER, ET AL.                                 NO. 01-0009-C-M3

# O R D E R

This matter comes before the Court on five (5) motions for protection order filed by the pro se plaintiffs in this consolidated litigation. Rec.doc.nos. 119-123. By Order dated March 12, 2004, rec.doc.no. 130, the Court directed the defendants to show cause why depositions recently conducted of these five (5) plaintiffs should not be suppressed and stricken for all purposes. The parties have responded and, on May 19, 2004, a hearing was conducted, at which time the Court entertained oral argument in connection with this issue.

The record reflects that, pursuant to Notices of Deposition issued by counsel for the defendants, but not filed into the record of this proceeding, the depositions of the five pro se incarcerated plaintiffs, Jeffrey Clark (DOC # 110365), David Mathis (DOC # 316588), David Brown (DOC # 293387), Barry Edge (DOC # 114250), and Robert G. Carley (DOC # 126267), were scheduled to take place on March 9 and 10, 2004, within the confines of the Louisiana State Penitentiary, a maximum security prison located in Angola, Louisiana. Notwithstanding the provisions of Rule

2

30(a) of the Federal Rules of Civil Procedure, the defendants did not seek or obtain prior approval of the Court prior to scheduling or conducting these depositions.

Thereafter, by motions filed on or about February 23, 2004, prior to the scheduled depositions, the named deponents, each of whom are party/plaintiffs in this action and none of whom have the benefit of counsel, moved for protective orders. The plaintiffs complained in these motions, <u>inter alia</u>, that in light of ongoing criminal investigations and impending criminal indictments, they were concerned that the defendants would utilize the depositions as a "fishing expedition" and inquire into possible criminal conduct by the plaintiffs to their detriment. Although these motions included certificates of the plaintiffs, attesting that copies of the motions had been forwarded to all counsel of record, the plaintiffs have essentially conceded that this was not done. Accordingly, it appears that the defendants' attorney did not receive <u>formal</u> notice of the referenced motions prior to the depositions. Notwithstanding, it appears clear from the deposition transcripts that, prior to commencement of the first deposition on March 9, 2004, deponent Jeffrey Clark advised counsel for the defendants of the pending motions and exhibited a copy of the referenced motion(s) for counsel's review. The defendants' attorney has represented to the Court that he did not give credence to the plaintiff's assertions in this regard, and has further represented to the Court that he did not review - or does not recall having reviewed - the proffered motions prior to the depositions, which went forward as scheduled.

Through inadvertence on the part of the Court, the referenced

motions were not ruled on prior to the scheduled depositions.

On the date of the depositions, March 9, 2004, the undersigned Magistrate Judge received a telephone call from the prison where the depositions were being conducted. During this telephone call, no one advised the Court that a motion for protective order had been filed, and, unfortunately, the Court was unaware at that time of its existence.

Counsel for the defendants advised the Court that one of the deponents was invoking his Fifth and Sixth Amendment rights and was refusing to respond to all questioning. Counsel for defendant stated that a prior deposition had been uneventful, that his questions were unrelated to alleged criminal activity, and that while he agreed that plaintiff had the absolute right not to answer questions that might tend to incriminate him, he could not refuse to answer all questions. Accordingly, counsel for the defendants sought an instruction from the Court, directing the plaintiff/deponent to respond to questions or face dismissal of his claims by the Court. The Magistrate Judge declined to give the requested instruction and instead stated that plaintiff should assert his rights as he deemed appropriate, and the evidentiary effect of his invocation, if any, could be taken up by subsequent motion and/or trial.

It was clear from the tenor of the telephone conference, however - during which the Magistrate Judge did not have an opportunity to confer with the deponent - that counsel for the defendants was threatening the plaintiff that the action would be dismissed if the plaintiff did not respond to questioning. It was further clear that the untutored plaintiff was very concerned regarding protection of his Fifth and Sixth

4

Amendment rights against self-incrimination. In point of fact, a representative of the plaintiff's criminal defense attorney was present at the deposition and had given written notice to the defendants' attorney prior to the depositions that there should be no questioning of the plaintiff. This admonition from the plaintiff's criminal attorney was apparently disregarded by defendants' counsel or, in any event, was not honored.

The Court has since learned that criminal indictments have now been entered against each of the five plaintiff/deponents, charging them with capital offenses for their alleged participation in the prison uprising which forms the underlying basis for this cause of action. In addition, the Court has since obtained transcripts of the referenced depositions and has reviewed same in connection with the plaintiff's motions.

In brief before this Court, the defendants represent in writing that the depositions went forward without objection and that they did not know, prior to the depositions, that the deponents had filed motions for protective order. See rec.doc.no. 144 at p. 4 and note 2. At the hearing on the rule to show cause, the defendants repeated this latter assertion, i.e., that they were entirely unaware of the pending motions, stating that their first notice of same came upon receipt, several days after the depositions, of the Court's Order to show cause, at which time "our jaws dropped - we didn't know anything about it." These representations are substantially undermined, however, by the deposition transcript of March 9, 2004, itself, which clearly reflects that, prior to the first deposition on that date, plaintiff Jeffrey Clark alerted the defendants to the fact that the referenced motions had been filed and,

5

further, indicated that a copy of such motion was available for counsel's review. According to inmate Clark, the motion "was on the table in front of me .... I showed it to [counsel for the defendants]". Counsel for the defendants, however, apparently gave no credence to the deponent's assertion, and made no attempt to determine whether such motions had in fact been filed. Nor, according to counsel for the defendants, did he make any effort to review the proffered motion prior to the depositions. As stated by counsel at the hearing, if an "inmate tells me about a motion he filed that I know nothing about, when these inmates tell me something, I don't necessarily believe that it's true. These guys, they file all kind of things. [If] we don't get copies of them, I don't believe him, I didn't believe him."

The deposition transcripts reflect that, during the depositions, numerous questions were posed of the plaintiffs which bear significantly on their potential criminal liability. For example, although the plaintiffs' claims, for the most part, relate to events which transpired after the prison uprising was contained and the plaintiffs were under control, the defendants take the position that "it is certainly appropriate for us to ask these inmates about what happened that day ... both before, during and after." And further, counsel for the defendants has stated: "I was there [at the depositions] to ask them questions about everything.... My intent was, and my intent is to ask them questions about everything that they might have done during the incident ... [and] after the incident ..., and I think I'm entitled to." As a result, the inmate plaintiffs faced questioning regarding what transpired during the uprising, regarding their participation in the uprising, and even

6

regarding statements allegedly given by them to criminal investigators during interrogation after the uprising, which statements were repeatedly read into the record over the objections of the plaintiffs. Although the plaintiffs sought to invoke and attempted to invoke their constitutional rights on numerous occasions during the depositions and sought to avoid incriminating themselves or waiving applicable privileges, it appears to the Court that the plaintiffs faced a clear danger of monumental importance, particularly in light of their untutored and unrepresented status and, more particularly, in light of the gravity of the capital offenses which they now confront.

Pursuant to the clear terms of Rule 30(a) of the Federal Rules of Civil Procedure, the deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes. Although there is no *per se* rule of suppression when there occurs a technical violation of the Rule's requirement of obtaining leave, Kendrick v. Schnorbus, 655 F.2d 727 (6th Cir. 1981); Miller v. Bluff, 131 F.R.D. 698 (M.D. Pa. 1990), the Court believes, under the circumstances of the instant case, that the referenced depositions should be suppressed. The five plaintiff/deponents, untutored in the law and unrepresented by counsel, made a well-considered and (almost) well-executed effort to stop the depositions through motions for protective order filed before their occurrence. They were all five under a perceived threat of criminal prosecution (which threat has now been realized in the form of capital indictments) and were understandably concerned regarding a possible "fishing expedition" and resulting potential prejudice in connection with their criminal proceedings. These

7

fears were, in large part, realized when during the depositions, they faced questioning which touched directly and repeatedly upon their potential criminal liability. Although they each explicitly asserted their Fifth and Sixth Amendment rights when faced with such questioning, counsel for the defendants persisted in questioning them at length regarding their alleged criminal activities - activities which were often tangentially relevant, at best.

"As officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens." Carroll v. The Jaques Admiralty Law Firm, 110 F.3d 290 (5th Cir. 1997). Courts have recognized that "attorneys are officers of the Court with an ethical duty to safeguard [constitutional] rights", International Union v. Garner, 102 F.R.D. 108 (M.D. Tenn. 1984), and "to conduct themselves in a manner compatible with the role of courts in the administration of justice." United States v. Colorado Supreme Court, 189 F.3d 1281, 1285 at n. 4 (10th Cir. 1999). At least one court, in recognizing the inherently unequal situation faced by unrepresented parties, has provided that "[c]ounsel taking the deposition of a pro se part will be expected to exercise care, patience, understanding, and reasonable accommodation to such party by reason of the circumstance that the party is unlikely to be trained or skilled in the law." Consolidated Rail Corporation v. Bangor and Aroostock Railroad Company, 1999 WL 562761 (E.D. Pa., July 27, 1999). While defendants certainly have a right to conduct discovery, that right is not completely unfettered. This is a case that called for additional measures to ensure that the plaintiffs' constitutional rights were adequately protected.

Although this Court expresses no opinion regarding whether counsel

8

for the defendants in this case overstepped the bounds of appropriate fair dealing during the depositions of the pro se plaintiffs in this case, the Court nonetheless disapproves of the circumvention of discovery rules, whether intentional or inadvertent. In the Court's view, the defendants clearly failed to comply with the provision of Rule 30(a) of the Federal Rules of Civil Procedure. The plaintiffs in this case made prompt objection to the proposed depositions, and they should not be prejudiced by the failure of the Magistrate Judge to rule on their motions prior to the depositions or the failure of defense counsel to give any credence to plaintiff's advising him prior to the depositions that a motion had been filed. Cf., Kendrick v. Schnorbus, supra (deposition allowed where inmate/plaintiff failed to object prior to unauthorized deposition). As in Savage v. Isthmian S.S. Co., 6 F.R.D. 311 (E.D. Pa. 1946), this court is "unwilling to sanction defendant's abortive circumvention of the Rules ... or to create any precedent whereby the court may be deprived of the exercise of discretion vested in it by [the Rules]." For this reason, the depositions taken of plaintiffs Jeffrey Clark (DOC # 110365), David Mathis (DOC # 316588), David Brown (DOC # 293387), Barry Edge (DOC # 114250), and Robert G. Carley (DOC # 126267) on March 9 and 10, 2004, shall be suppressed. The defendants shall be allowed to reschedule these depositions, at the defendants' expense, upon motion and leave of court in accordance with Rule 30(a). Accordingly,

**IT IS ORDERED** that the motions for protective order of plaintiffs Jeffrey Clark (DOC # 110365), David Mathis (DOC # 316588), David Brown (DOC # 293387), Barry Edge (DOC # 114250), and Robert G. Carley (DOC #

126267), rec.doc.nos. 119-123, be and they are hereby **GRANTED**. The depositions of these individuals are hereby suppressed and shall be stricken from the record and may not be used by the parties for any purpose, whether in state or federal proceedings or for impeachment or otherwise.

**IT IS FURTHER ORDERED** that the referenced depositions shall be retained in the possession of the respective parties and shall not be disseminated or disclosed to any third person, or to any person who has not already been provided with a copy of same, without leave of court.

Baton Rouge, Louisiana, this 22nd day of July, 2004.

_____
DOCIA L. DALBY
MAGISTRATE JUDGE